IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES M. WORMELY and CARLEASA WORMELY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No.   06 C 2965 ) ) Chief Judge James F. Holderman |
| FRANK PONCE, in his official and individual capacities, YVONNE RODGERS, LAKISHIANA RODGERS, KEAWANNA RODGERS, and the CITY OF CHICAGO, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Charles M. Wormely ("Charles") and his sister, Carleasa Wormely ("Carleasa") (collectively "the Wormelys"), brought this lawsuit under 28 U.S.C. §§ 1983, 1985, 1986, and Illinois law against the City of Chicago, Officer Frank Ponce ("Ponce"), and three of their neighbors–Yvonne Rodgers ("Yvonne"), Lakishiana Rodgers, and Keawanna Rodgers (collectively "the Rodgers").  The Wormelys contend that Ponce unlawfully executed a search warrant on their home, causing damage to their persons and possessions.  Before this court are the following motions:  Ponce's Motion to Strike Plaintiffs' One Page Supplemental Memorandum Filed Without Leave of Court on September 13, 2007 [192], Ponce's Motion to Strike Plaintiffs' Local Rule 56.1(b)(3)(A) Response to His Statement of Undisputed Facts [170], and Ponce's Motion for Summary Judgment [148].

The court first addresses Ponce's evidentiary motions because his objections to the Wormelys' summary judgment submissions are extensive and affect, in large part, the facts that

properly can and should be considered by the court in addressing Ponce's motion for summary judgment.

 A. *Ponce's Motions to Strike*

As an initial matter, Ponce seeks to strike two documents submitted by the Wormelys in response to his motion for summary judgment. First, Ponce asks this court to strike a document entitled "Additions of Admissions By Defendant Ponce, to Pfs' Response Opposing Df. Ponce's Motion for Summary Judgment" (submitted as docket no. 180 and resubmitted as docket no. 182), arguing that the Wormelys never obtained permission to file the document. Ponce is correct. By minute order dated September 12, 2007, this court granted the Wormelys leave to file two additional documents in support of their memorandum in opposition to summary judgment: Defendant Ponce's Response to Plaintiffs' Requests to Admit and Defendant Ponce's Answers to Plaintiffs' Interrogatories. The Wormelys were not given leave to supplement or amend their memorandum of law opposing summary judgment or Rule 56.1 statement in any other way. Thus, documents filed by the Wormelys on September 13, 2007, as docket entries numbered 180 and 182 are stricken.

Second, Ponce seeks to strike the Wormelys' response to his proposed statements of undisputed fact in its entirety for failure to comply with Local Rule 56.1. Although this court denies Ponce's request to strike the Wormelys' Rule 56.1(b) submission in its entirety, many of the responses must be stricken individually, in whole or in part, for failure to comply with Local Rule 56.1.

To assist the court in ruling on a motion for summary judgment, Local Rule 56.1 of the Northern District of Illinois imposes certain requirements on the parties. First, the moving party

2

must file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). In return, the opposing party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). Local Rule 56.1(b) is not satisfied by general denials but requires instead that the opposing party cite to specific evidentiary materials supporting the denial, *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004), nor is Local Rule 56.1(b) satisfied by argumentative, evasive, or improper denials, *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). Failure of an opposing party to respond properly will result in the court deeming admitted the statements of fact set forth in the moving party's 56.1(a)(3) submission. L.R. 56.1(b)(3)(C); *see Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). It is within the district court's discretion to require strict compliance with Rule 56.1. *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) (collecting cases).

Ponce argues that the Wormelys' responses to paragraphs 8, 9, 12, 25, 26, 35, 38, 40, 41, 46, and 47 should be stricken because they are based on affidavits that alter the Wormelys' deposition testimony. A review of the responses to paragraphs 35, 38, 40, 41, and 46 reveal that the Wormelys have indeed cited to affidavits that contradict, at least in part, prior deposition testimony. Thus, to the extent the denials rely upon facts asserted in affidavits that are inconsistent with prior deposition testimony, this court will disregard the affidavits. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001) ("[A] party may not attempt to survive a motion for summary judgment by manufacturing a factual dispute through the submission of an

3

affidavit that contradicts prior deposition testimony."). Moreover, a review of the remaining responses demonstrates that the Wormelys misrepresented evidence used to support the denials (¶ 8), failed to cite admissible evidence controverting a fact at issue (¶¶ 8, 9, 12, 47), improperly attempted to add new facts (¶¶ 9, 25, 47), and included improper argument (¶ 25). Consequently, the Wormelys' responses to paragraphs 8, 9, 12, 25, and 47 are stricken, and Ponce's statements of fact set forth in those paragraphs of Ponce's Local Rule 56.1(a) statement [149] are deemed admitted.

Ponce also argues that the Wormelys' responses to paragraphs 6, 7, 11, 14, 15, 16, 17, 18, 19, 24, 26, 27, 28, 30, 31, 32, 39, 43, 49, 50, 52, 54, 56, and 57 should be stricken for failure to comply with Rule 56.1(b). In fact, many of the responses misrepresent evidence used to support the denials (¶¶ 6, 11), fail to cite admissible evidence controverting a fact at issue (¶¶ 6, 11, 14, 15, 16, 17, 18, 19, 27, 28, 30, 31, 32, 39, 43, 49, 50, 52, 56, 57), improperly attempt to add new facts (¶ 11, 28), and included improper argument (¶¶ 14, 15, 16, 17, 18, 24, 27, 28, 31, 32). For example, in response to paragraph 19, the Wormelys cite to six affidavits purporting to establish that Yvonne met with Ponce prior to June 26, 2005. Three of the affidavits make no mention whatsoever of meetings between Yvonne and Ponce, and none of the affidavits specify that the affiants personally observed interactions between Yvonne and Ponce. Instead, the affidavits leave this court wondering how the affiants acquired their information. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'") (internal quotation marks omitted). Accordingly, the

Wormelys' responses to paragraphs 6, 11, 14, 15, 16, 17, 18, 19, 24, 27, 28, 30, 31, 32, 39, 43, 49, 50, 52, 56, and 57 are stricken, and Ponce's statements of fact set forth in those paragraphs are deemed admitted.

Finally, this court notes that many of the facts set forth in the Wormelys' Rule 56(b)(3)(C) Statement of Additional Facts [157] suffer from the same flaws as the Wormelys' 56.1(b) responses. *See Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 923-24 (7th Cir. 1994) (explaining that district court may *sua sponte* enforce Local Rule 56.1). Specifically, paragraphs 2, 3, 4, 8, 9, 10, 11, 13, 15, 16, 22, 23, and 26 either fail to cite evidence entirely or cite evidence that does not support the fact asserted. Those paragraphs therefore are stricken. In addition, paragraphs 20, 21, 27, and 28 cite affidavits that are inconsistent with the affiant's prior deposition testimony. Thus, to the extent those paragraphs contain facts asserted in affidavits that are inconsistent with prior deposition testimony, the court will disregard the affidavits. *See Amadio,* 238 F.3d at 926.

  *B. Ponce's Motion for Summary Judgment*

In ruling on any motion for summary judgment, this court must consider the facts in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in the non-moving party's favor. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Therefore, in considering this motion the court will review the facts and all reasonable inferences in favor of the Wormelys.

On June 26, 2005, three of Charles Wormely's pit bull dogs fought with Eclipse, a dog owned by Charles's neighbor Yvonne Rodgers, in front of the Wormelys' residence at 1846 South Kildare in Chicago, Illinois. Eclipse sustained multiple puncture wounds and lost a large

5

amount of blood as a result of the fight, and Yvonne had Eclipse euthanized that same day. The next day, Yvonne called the police to report the fight. Police Officers Daily and Givens responded to Yvonne's call and prepared a report for criminal damage to property stemming from the dog fight. In addition, Yvonne had received from a nurse at the veterinary hospital that treated Eclipse a telephone number to call when dogs have been "abused" by other dogs. Yvonne called the number several times after the fight and eventually talked with a man who told her that the police would come to talk with her.

On June 29, 2005, Ponce, who was assigned to the Animal Abuse Control Team, and another officer talked with Yvonne. This was the first time Yvonne had met Ponce. Yvonne told the officers that a person known as "Charlie" lived at 1846 South Kildare. Charlie was a 25- to 30-year-old, slim, black male with curly hair. On June 26, 2005, Yvonne said, she saw Charlie intentionally release one of his male pit bulls from the front yard of 1846 South Kildare to attack another dog. While Charlie's pit bull was attacking the other dog, Yvonne saw Charlie release an additional two pit bulls to attack the same dog, causing severe injuries and bleeding to the dog. Yvonne then saw Charlie take the pit bulls into the townhouse at 1846 South Kildare. Yvonne also told the officers that Charlie kept his dogs inside the residence and that she had witnessed Charlie taking the dogs from the back yard into the townhouse on several occasions.

After viewing the front and back yards of 1846 South Kildare and seeing a puppy and several chains, Ponce escorted Yvonne to 26th and California Street to testify before Judge Michael Toomin in support of a warrant to search the 1846 South Kildare residence. Under oath Yvonne recounted for Judge Toomin the events of June 26, 2005, and attested to the accuracy of the statements attributed to her in the complaint for search warrant. On June 30, 2005, Judge

Toomin issued a search warrant, commanding Ponce to search the townhouse at 1846 South Kildare as well as a 25- to 30-year-old, slim, black male with curly hair known as "Charlie." The warrant further commanded Ponce to seize "[a]ny animals intentionally used to cause another companion animal to suffer serious injury or death."

On July 2, 2005, at approximately 11:00 a.m., Chicago police officers executed the search warrant on 1846 South Kildare by first knocking at the front door then, after receiving no response, forcing their way through the door. Carleasa Wormely was the only person in the townhouse at the time of the search. According to Carleasa, she had just finished showering and putting on her undergarments when she heard "a pounding at the door," so she put on her robe and headed downstairs. As she neared the door, several officers "busted in the house" with their guns drawn and ordered her to "turn against the wall and put [her] hands up." She tried to tell the officers that her robe would not stay closed because it was missing a string to tie it shut, but the officers nevertheless ordered her to put her hands against the wall. An unidentified officer then handcuffed her and told her to sit at a Fischer-Price play table. (Carleasa estimated that no more than two minutes elapsed between the time she was told to put her hands up and the time she was handcuffed.) While she was sitting at the play table, her robe fell open and remained that way despite her pleas for someone to close it for her. Carleasa sat at the play table for 10 to 15 minutes before she was allowed to move to the couch. After about 30 minutes, an unidentified female officer arrived, quickly searched Carleasa, and tied Carleasa's robe shut. When asked to describe her interaction with Ponce, Carleasa explained:

> A. Well, he like the other officers, he ignored me when I kept asking – demanding what was going on and asking for assistance with my robe. And like the only time he talked to me about anything was when he wanted me to escort Gino [one of the dogs] outside.

7

> Q. Did he ever touch you?
>
> A. No.
>
> Q. Did he ever verbally abuse you?
>
> A. No.
>
> Q. When he asked you to help escort Gina [sic] outside, did he ask it politely?
>
> A. He asked me why was Gino not responding to him and I said, Because he doesn't know you.
>
> And he was like, Will he listen to you?
>
> And I said, Gino, sit. Gino sat.
>
> And he's like, Oh, he listens to you. Will you take him outside?

The officers were at the residence for approximately two hours and seized three adult pit bulls as well as several puppies.

Charles arrived at 1846 South Kildare while the police officers were executing the search warrant but was not allowed to enter the residence. Instead, Ponce arrested Charles, placed him in a squad car, and transported him to the police station where Ponce and another officer told Charles that he would remain in jail indefinitely if he refused to "sign over" his dogs. Charles signed the document presented to him by the officers but did not know at the time that he was permanently relinquishing possession of his dogs. Although Charles was initially arrested on charges of cruel treatment to animals and criminal damage to property, he was ultimately tried and acquitted of two counts of reckless conduct. All other charges against Charles were dismissed.

In August 2006 the Wormelys filed this lawsuit against the City of Chicago, Ponce, and the Rodgers. Five constitutional violations alleged by Charles—wrongful arrest, false imprisonment, malicious prosecution, conspiracy, and unlawful deprivation of property—and one constitutional violation alleged by Carleasa—false imprisonment—are relevant to Ponce's motion for summary judgment. The Wormelys also assert numerous state-law claims against Ponce, but those claims, which are before the court under supplemental jurisdiction, do not require discussion here unless the Wormelys' federal claims can survive summary judgment or the court decides to retain supplemental jurisdiction over those claims.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Keri*, 458 F.3d at 627-28. Once a properly supported motion for summary judgment is made, the non-moving party cannot rest on its pleadings but must affirmatively demonstrate, by specific factual evidence, that there is a genuine issue of material fact requiring trial. *Celotex Corp.*, 477 U.S. at 324; *Keri*, 458 F.3d at 628. "Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)).

> 1. *Charles Wormely's Wrongful Arrest, False Imprisonment, and Malicious Prosecution Claims (Counts II, III, and VII)*

Ponce first argues that he had probable cause to arrest Charles and consequently is entitled to summary judgment on Charles's allegations of wrongful arrest, false imprisonment, and malicious prosecution. The existence of probable cause to arrest is an absolute defense to a claim against police officers under 42 U.S.C. § 1983 for wrongful arrest, false imprisonment, or malicious prosecution. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)). Probable cause to arrest exists when the facts and circumstances within the officer's knowledge at the time of the arrest "are sufficient to warrant a prudent person in believing that the suspect had committed an offence." *Mustafa*, 442 F.3d at 547 (internal quotation marks omitted). Police officers have probable cause to arrest "[o]nce a reasonably credible witness informs an officer that a suspect has committed a crime." *Id.* at 548; *see Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006). Probable cause is a question of law when facts sufficient to create probable cause are undisputed. *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999).

In this case, the events described by Yvonne concerning the dog fight on June 26, 2005, could have led a prudent person to believe that Charles had committed a crime. *See* 720 ILCS 5/21-1(1)(d) ("A person commits an illegal act when he . . . knowingly injures a domestic animal of another without his consent"). The Wormelys do not dispute that Yvonne told Ponce and Judge Toomin that an individual named "Charlie," matching Charles's physical description, lived at 1846 South Kildare and intentionally released three of his pit bulls to attack another person's dog, causing severe injury to the dog. The Wormelys also do not dispute that Charles lived at 1846 South Kildare or that Ponce seized several pit bulls from that residence. Instead, the Wormelys argue that Yvonne is not a credible witness. The Wormelys, however, point to no

admissible evidence showing that Ponce had reason to doubt Yvonne's credibility at the time of Charles's arrest. *See Mustafa*, 442 F.3d at 548 (explaining that arresting officer may take reasonably credible witness "at his word"); *Askew*, 440 F.3d at 896. The Wormelys therefore have failed to show a genuine issue of material dispute concerning whether a prudent person in Ponce's position might have believed that Charles committed the offense of criminal damage to property.

To the extent that the Wormelys construe Charles's wrongful arrest and false imprisonment claims to include a claim that the search of the residence at 1846 South Kildare was unlawful because the search warrant was not supported by probable cause, this claim fails for the same reasons. Probable cause for a search warrant exists when the "known facts and circumstances are sufficient for a reasonably prudent person to form the belief that contraband or evidence of a crime will be found." *United States v. Lake*, 500 F.3d 629, 632 (7th Cir. 2007). It is undisputed that Yvonne told Ponce and Judge Toomin that she saw a person named "Charlie" intentionally allow his dogs to attack another person's dog in front of the townhouse at 1846 South Kildare and then take his dogs into the residence. Yvonne also told Ponce and Judge Toomin that she saw "Charlie" take the dogs from the back yard of 1846 South Kildare into the townhouse on several occasions prior to the attack. Ponce then viewed the property at 1846 South Kildare and observed "chains" and a puppy in the back yard. Based on these facts, a reasonably prudent person could have believed that the dogs used in the attack described by Yvonne would be found within the residence. The Wormelys insist, however, that "Ponce had reason to believe that anything that Yvonne Rodgers had told him was likely to be untrue" and that Ponce "misled Judge Toomin in order to obtain the warrant," yet the Wormelys point to no

11

admissible evidence to support his contentions. *See Keri*, 458 F.3d at 628 (explaining that unsupported allegations cannot withstand summary judgment).

     2.  *Charles Wormely's Conspiracy Claim (Count V)*

  Ponce next argues that he is entitled to summary judgment on Charles's claim that Ponce conspired with Yvonne to have Charles unlawfully arrested and to confiscate his dogs because the Wormelys cannot establish a prima facie case for civil conspiracy. To establish liability through a conspiracy theory under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law violated his constitutional rights. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). In this case, the Wormelys have failed to show a genuine issue of material dispute concerning whether he suffered a constitutional injury as a result of Ponce's actions, and so the Wormelys cannot prevail on their § 1983 conspiracy claim.

  Moreover, inasmuch as the Wormelys now attempt to bring their conspiracy claim within the purview of 42 U.S.C. § 1985 by arguing that Ponce and Yvonne conspired to deprive Charles and Carleasa of the equal protection of the law by targeting them for abuse because they are black, *see Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999) (stating that conspiracy under § 1985 must be for "purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"), this claim is barred because the Wormelys raised it for the first time in their memorandum of law in opposition to Ponce's motion for summary judgment, *see Stevens v. Hyre Elec. Co.*, ___ F.3d ___, No. 06-3501, 2007 WL 2990937, at *9 (7th Cir. Oct. 16, 2007) (explaining that district court acts within its discretion when refusing to allow litigant to raise argument for first time in summary judgment filings).

### 3. *Carleasa Wormely's False Imprisonment Claim (Count XVIII)*

Ponce also argues that he is entitled to summary judgment on Carleasa's allegations of false imprisonment because police officers have a categorical right to detain occupants of a home while they are executing a search warrant. Existence of a search warrant "founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *see Muehler v. Mena*, 544 U.S. 93, 98 (2005). Because a warrant founded on probable cause existed to search the residence at 1846 South Kildare and Carleasa was an occupant of the residence at the time of the search, her detention for the duration of the search was reasonable.

In addition, to the extent that the Wormelys argue that the manner in which Carleasa was detained was unreasonable, Carleasa did not identify Ponce in her deposition as the officer who handcuffed her and, in fact, testified that Ponce did not touch her during the search. Only in a subsequent affidavit filed in opposition to summary judgment does Carleasa state: "The more I think about it, I am convinced that it [sic] Ponce who handcuffed me." But "self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Keri*, 458 F.3d at 628.

### 4. *Charles Wormely's Unlawful Deprivation of Property Claims (Counts IX and X)*

Finally, Ponce argues that summary judgment is appropriate on Charles's claims that Ponce unlawfully confiscated, damaged or destroyed the front door to the Wormelys' residence, personal property within the residence, and Charles's dogs because the Wormelys have failed to state a federal claim. The unauthorized intentional deprivation of an individual's property by a person acting under color of law does not give rise to a due process violation so long as "a

meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see Gable v. City of Chicago*, 296 F.3d 531, 539-40 (7th Cir. 2002). Illinois law provides actions for replevin and conversion that are sufficient to redress claims like the Wormelys'. *See Gable*, 296 F.3d at 540 (stating that Illinois cause of action for replevin provides adequate postdeprivation remedy); *Greco v. Guss*, 775 F.2d 161, 169 (7th Cir. 1985) (stating that Illinois cause of action for conversion provides adequate postdeprivation remedy). The Wormelys therefore must pursue these claims in state court.

    C.    *Conclusion*

For the reasons stated in this memorandum opinion and order, this court grants summary judgment in favor of defendant Ponce on Counts II, III, V, VII, and XVIII with prejudice. Finding no prudential reason to retain the Wormelys' supplemental state-law claims, the court dismisses Counts VIII, IX, X, XII, XIII, XIV, XV, and XVII without prejudice. *See United Mineworkers of Am. v. Gibbs*, 383 U.S. 715 (1966). This case is dismissed in its entirety.

                      ENTER:

                      _____
                      James F. Holderman
                      Chief Judge

Date: November 19, 2007